NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WYSTAN Z., | ) | |
| | ) | Supreme Court No. S-15276 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-11-00025 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT[*] |
| DEPARTMENT OF HEALTH | ) | |
| & SOCIAL SERVICES, OFFICE | ) | No. 1501- [June 11, 2014] |
| OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Joanne M. Grace, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

---

[*] Entered under Appellate Rule 214.

1.	Wystan Z. appeals the termination of his parental rights to his daughter Raina.[1]  He challenges the superior court's findings that (1) Raina is a child in need of aid (CINA) because Wystan sexually abused her and caused her mental injury; (2) the Office of Children's Services (OCS) made reasonable efforts to reunify the family; (3) Wystan failed to remedy the conduct that caused Raina to be a child in need of aid; and (4) termination of Wystan's parental rights is in Raina's best interests. Wystan also claims that he received ineffective assistance of counsel in a related domestic violence proceeding.  We affirm the superior court's order terminating Wystan's parental rights.  We further find no basis in the record to conclude that Wystan received ineffective assistance of counsel in this CINA proceeding.

2.	OCS became involved in Raina and Wystan's lives in July 2010 when Raina told her mother, Tina, and grandmother, Nadeen, that Wystan had sexually abused her during one of their scheduled visits.  Raina began experiencing severe anxiety.  OCS formulated a safety plan with Tina and Nadeen to protect Raina from further contact with her father.

3.	In August 2010, on Raina's behalf, Nadeen applied for a domestic violence restraining order against Wystan. Wystan was represented by a private attorney throughout the domestic violence proceedings that followed.

4.	OCS developed a case plan for the family beginning November 1, 2010.  The plan required Wystan to obtain a sex offender evaluation, obtain a substance abuse assessment, and complete a parental risk assessment.

5.	Raina's mother Tina died of a drug overdose in March 2011; Raina was present when Tina went into seizure.  OCS filed an emergency petition to adjudicate

---

[1]	Pseudonyms are used to protect the family's privacy.

Raina as a child in need of aid. It took emergency custody of Raina and placed her with Nadeen. Wystan was initially represented in the CINA proceeding by a public defender.

6. Acting on the advice of his private attorney in the domestic violence case, Wystan refused to engage in his OCS case plan until the domestic violence proceedings were resolved. In the meantime he did not submit to any drug testing, complete the parental risk assessment, or seek therapy. Although he had completed a sexual behavior evaluation in September 2010, as required by his case plan, he did not authorize the evaluation's release to OCS while the domestic violence proceedings remained pending.

7. The domestic violence case was resolved in October 2011. OCS began working towards supervised visitation between Wystan and Raina; their first visit occurred in December 2011.

8. Even after the resolution of the domestic violence proceedings, however, Wystan did not fully engage in his case plan. He did not provide OCS with a signed release of information for the sexual behavior evaluation until November 2011. He did not make an appointment to complete the parental risk assessment until January 2012, and the therapist could not complete the assessment until late March. He did not engage in any therapy until April, even though OCS gave him referrals. OCS also provided a referral for a substance abuse assessment at Fresh Start, which Wystan did not complete until January 2012. He refused to provide a hair sample that would have shown historical drug usage.

9. The superior court held an adjudication hearing in February 2012. Wystan had replaced his public defender with the private attorney he had hired to represent him in the domestic violence proceedings, and the private attorney continued to represent him throughout the adjudication phase of the case. The superior court

adjudicated Raina as a child in need of aid and found that (1) OCS had made reasonable efforts to reunify the family; (2) returning Raina to Wystan's care would likely cause her serious emotional or physical harm; and (3) it was in Raina's best interests to continue living with Nadeen.

10.     After the adjudication hearing, Wystan did begin therapy, but he would occasionally disappear for several weeks at a time; he missed five or six sessions during the six months he was engaged in therapy.  He began seeing a different therapist in January or February 2013, but as of the termination trial he still had not completed all of the preliminary assessments and therefore had not received any therapy from the new therapist.

11.     OCS filed a termination petition in October 2012.  The court held a trial in April and May 2013 and terminated Wystan's parental rights by written order in August 2013.

12.     The superior court found by clear and convincing evidence that Raina was a child in need of aid[2] because of sexual abuse by Wystan.[3]  The superior court based its finding on Raina's disclosures of sexual abuse, expert opinions about the truth of her disclosures, and testimony about physical symptoms that corroborated abuse.  On appeal, Wystan argues that OCS failed to prove by clear and convincing evidence that sexual abuse occurred.  He points to problems with the forensic interview of Raina following her first disclosure and the fact that Raina later recanted.  But the superior

---

[2]     "To terminate parental rights . . . the court must find by clear and convincing evidence that the child 'has been subjected to conduct or conditions described in AS 47.10.011' and is thus in need of aid." *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013) (quoting CINA Rule 18(c)(1)(A)).

[3]     AS 47.10.011(7).

court heard extensive testimony about the forensic interview and Raina's credibility. The court cited evidence that Raina was unaffected by the problems associated with the forensic interview. The court acknowledged Raina's recantations but relied on expert testimony that explained that it is not uncommon for children to recant, that there are various reasons why children may feel compelled to do so, and that the truth of the initial disclosure is not necessarily undermined by the recantation. The court's finding that the sexual abuse occurred is not clearly erroneous.[4]

13. Wystan also argues that his own repeated denials that any sexual abuse occurred, despite OCS's use of these denials against him "as a form of non-cooperation," prove that the allegations must be false. But the superior court heard Wystan's testimony and did "not find him credible regarding the sexual abuse of [Raina]." "We give particular deference to the trial court's factual findings when . . . they are based primarily on oral testimony,"[5] and we cannot say that the superior court clearly erred in its determination of credibility.

14. Wystan also takes issue with the court's reliance on evidence of Raina's anxiety in making its findings about sexual abuse. He argues that the trial testimony about Raina's anxiety does not support a finding of sexual abuse but instead shows that it is "clearly linked" to Raina's grief over her mother's death. But Raina's therapist testified that the two main issues contributing to Raina's anxiety were the "fear of losing her grandmother and . . . issues related to her dad." While Raina was able to

---

[4] "In a child in need of aid (CINA) termination proceeding we review a superior court's factual findings for clear error." *Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 642 (Alaska 2013).

[5] *Josephine B. v. State, Dep't of Health & Soc. Servs.*, 174 P.3d 217, 222 (Alaska 2007).

express her anxiety about losing her grandmother, she avoided discussing her father, which in her therapist's opinion indicated "a degree of anxiety that the child doesn't really feel capable of dealing with." The superior court did not clearly err in relying on this testimony.

15. The superior court also found that Wystan's conduct caused Raina mental injury.[6] Wystan argues on appeal that this finding is clearly erroneous because it was not supported by expert testimony. But the superior court based its finding of mental injury on the testimony of "many of the counselors and experts," including the testimony of Raina's therapists that Wystan's conduct caused her mental harm. There was also evidence that Wystan's failure to follow OCS's visitation rules caused Raina severe anxiety, manifested by physical symptoms. We have upheld findings of mental injury on similar facts and see no clear error in the court's finding here.[7]

16. Wystan also challenges the superior court's finding that OCS made reasonable efforts to facilitate his reunification with Raina.[8] OCS provided referrals for a sex offender assessment and a parental risk assessment. It referred Wystan to therapy

---

[6] AS 47.10.011(8) (A child is a child in need of aid where "conduct by or conditions created by the parent . . . have resulted in mental injury to the child"). "Mental injury" is defined as "a serious injury to the child as evidenced by an observable and substantial impairment in the child's ability to function in a developmentally appropriate manner and the existence of that impairment is supported by the opinion of a qualified expert witness." AS 47.17.290(10).

[7] *See, e.g.*, *Josephine B.*, 174 P.3d at 222 (upholding finding of mental injury where the parent's conduct led to "unhealthy levels of anxiety").

[8] In order to terminate parental rights, the superior court must find by clear and convincing evidence that OCS made "reasonable efforts to provide family support services to the child and to the parents . . . that are designed to . . . enable the safe return of the child to the family home." AS 47.10.086(a); CINA Rule 18(c)(2)(A).

and paid for his therapy with Dr. Webster. It referred Wystan to a substance abuse assessment with Fresh Start and provided random drug testing. OCS also conducted home visits and told Wystan what he would have to do to make his home safe for Raina. It referred him to a parenting program with Fairbanks Counseling and Adoption. Its representatives met with Wystan and provided him with case management services. OCS provided Raina with extensive therapy. Rosalie Rein, an OCS case worker, also met with Raina for two or three hours every week, prepared Raina for visitation with Wystan, and facilitated and attended visitations between Raina and her paternal grandparents. Based on this evidence, we again see no clear error in the superior court's finding that OCS made reasonable efforts.

17. Wystan also argues that the superior court erred in finding that he failed to remedy the conduct or conditions that placed Raina in need of aid.[9] The superior court found that Wystan "did not actively work his case plan," "failed to keep in contact with OCS[,] and failed to meet reasonable requests of OCS regarding tests and treatment." The court also found that Wystan "failed to follow the rules and recommendations of OCS and [his] therapists on several occasions." The court therefore concluded that Wystan "did not remedy the conduct that placed [Raina] at risk" and that he did not "make sufficient progress in a reasonable period of time, which made [Raina]

---

[9] "In order to terminate parental rights, the superior court must find by clear and convincing evidence that the parent has failed, within a reasonable time, to remedy the conduct that placed the child at substantial risk of harm." *Casey K.*, 311 P.3d at 644 (citing AS 47.10.088(a)(2)). The court may consider "the parent's efforts; the history of harmful conduct or conditions created by the parent; the likelihood that harmful conduct will continue; and the likelihood of returning the child to the parent within a reasonable time, considering the child's age and needs." *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 431 (Alaska 2012) (internal citations and quotation marks omitted).

remain at substantial risk of mental injury." Even while he was engaging in his case plan, Wystan failed to understand or adequately address Raina's trauma and anxiety issues. He was unwilling to consistently follow visitation rules. He would act inappropriately during visits and appear unexpectedly at Raina's outside activities, causing her severe anxiety. This evidence supports the superior court's findings and we see no clear error.[10]

18. Wystan argues that the superior court erred in finding that the termination of his parental rights is in Raina's best interests. But the superior court's finding was supported by evidence of Raina's substantial anxiety during and after visits with Wystan, the decrease in her anxiety after visits were suspended, and her need for permanency. There is no clear error in this finding.

19. Wystan also argues that the superior court erred by rejecting his proposal that the court place Raina in a guardianship rather than terminating his parental rights. But a guardianship would not have satisfied the child's need for permanency, and the superior court did not err in rejecting this option.[11]

---

[10] *See, e.g.*, *Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 255 P.3d 1003, 1011-12 (Alaska 2011) (holding that the father's "apparent failure to internalize his treatment and accept responsibility for the harm he caused" supported the finding that the father failed to timely remedy the conduct that placed the child at substantial risk of harm); *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 273 (Alaska 2011) (explaining that failing to "accept or understand a child's disabilities constitutes a failure to remedy"); *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1260 (Alaska 2010) (noting that the question is not whether the parent completed the case plan, but whether the parent "had remedied the problems that placed [the] children at risk").

[11] *See Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's*
(continued...)

20. Finally, Wystan argues that he received bad advice from his attorney in the domestic violence proceedings because she advised him not to cooperate with OCS while the domestic violence issues were being resolved, thus harming his ability to show at the termination trial that he had remedied the conduct or conditions that caused Raina to be a child in need of aid. During the period in which the domestic violence and CINA proceedings were simultaneously pending, Wystan was separately represented by a public defender in the CINA proceedings.[12] Wystan does not challenge the competence of either of the two attorneys who represented him in the CINA case; rather, he complains about the advice provided by his attorney in the domestic violence proceeding. Thus, there is no basis for any claim that Wystan did not receive effective assistance of counsel in this case.

21. The order terminating Wystan's parental rights to his daughter Raina is AFFIRMED.

---

[11](...continued)
*Servs.*, 222 P.3d 841, 851 (Alaska 2009) (concluding that "the children's need for permanence and security would not be met" if parental rights were not terminated and the children's lives would be "under the cloud of continuing uncertainty").

[12] Wystan was represented in this CINA case by a public defender from March to October 2011. He was thereafter represented through June 2012 by the same private attorney who had represented him in the domestic violence proceedings. He does not challenge the representation he received by either attorney in this CINA case, and it is presumptively competent. *See David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 784 (Alaska 2012).